IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. ELH 18-017 |
| WILLIAM ROBINSON, | |
| Defendant | |

RESPONSE IN OPPOSITION TO
DEFENDANT'S THIRD MOTION FOR SENTENCING REDUCTION

BACKGROUND

On June 27, 2018, defendant William Robinson was sentenced to 144 months in prison for conspiring to distribute one kilogram or more of heroin. Robinson is currently serving his sentence at FCI Cumberland in Maryland.  On October 12, 2020, Robinson—having served only a fraction of his sentence—moved for compassionate release. ECF No. 773. Robinson has exhausted his administrative remedies.  On October 26, 2020, the Government filed its Response in Opposition to this Motion.  ECF No. 786.  On February 3, 2021, the Court denied the Defendant's motion for compassionate release without prejudice.  ECF No. 890.   The Court determined that the Defendant satisfied the "extraordinary and compelling prong of the § 3582 analysis."  ECF No. 889, at p.19. The Court also found, however, that a 12-year sentence was justified under 18 U.S.S.C § 3553(a) because he was danger to the community in light of his criminal history and because he was the leader of a major drug operation.  *Id*. at pp. 21-22.  On August 10, 2021, the Defendant filed a Second Motion for Compassionate Release. ECF No. 962.  In his pro se Motion, the Defendant argues that his positive test for COVID-19 and his chronic medical conditions justify his early release. The Government opposed his second motion and argued that the Defendant had not cited any new reasons for compassionate release. ECF No.  1006.  The Court denied the Defendant's

motion and highlighted that "[t]he § 3553(a) factors militate against Robinson's immediate release. In sum, the Court remains troubled by the serious nature of defendant's offense of conviction and Robinson's criminal history, reflecting his repeated failure to conform his conduct to societal expectations." ECF No. 1135, p. 29. The Defendant now files his third motion for compassionate release.

In his third motion for compassionate release, the Defendant makes the following eight points in support of his motion: (1) that Congress empowered the sentencing judges to mitigate criminal justice inequities through the First Step Act, (2) that the Defendant suffers from untreated health conditions and the Bureau of Prisons is known for their negligent care; (3) that the Defendant's guilty plea and sentencing were "fast-tracked" and therefore he should now receive a reduction in sentence, (4) that the Defendant has been rehabilitated because of his participating in RDAP, and other programs within the Bureau of Prisons, (5) that he has a stable home plan when he is released, (6) he has abated his drug use, (7) that there is a gross disparity between his original sentence and what Congress would believe is now an appropriate penalty, and (8) that he received ineffective assistance of counsel because his attorney that he should "take the plea" and warned him that if he went to trial, he would receive a more severe sentence.

## LEGAL FRAMEWORK

The federal sentencing statute provides that an inmate cannot move for compassionate release until he has exhausted administrative remedies with the BOP or by showing that the BOP failed to respond to her request within 30 days.[1] Once the inmate exhausts administrative remedies

---

[1]    For the purpose of this opposition, the government uses the term "exhaustion" to include the scenario where the BOP does not respond within 30 days of the inmate's request for compassionate release.

and confers authority on the Court to rule on his motion, the Court can only reduce the inmate's sentence upon a showing of "extraordinary and compelling reasons" warranting the reduction, that the inmate is no longer a danger to the community, and that the reduction would be consistent with the relevant Sentencing Commission policy statement and 18 U.S.C. § 3553(a) factors. The following sections explain this legal framework in detail.

**A. Court's authority to adjudicate motions for compassionate release.**

Under 18 U.S.C. § 3582(b), the district court has only limited authority to modify a final sentence. *Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (noting that under Section 3582, the Court generally "may not modify a term of imprisonment once it has been imposed"); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart") (internal quotation omitted); *United States v. Brown*, RDB-16-553, at 2 (D. Md. Mar. 26, 2020) (holding that the Court "may not modify the sentence imposed . . . unless certain limited circumstances arise or as permitted under Rule 35 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3582(c)"). Section 3582(c)(1)(A)(i), commonly termed the "compassionate release" provision, provides one such exception by permitting courts to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons" exist for doing so, consistent with the applicable policy statements of the Sentencing Commission.

As amended by the First Step Act, Section 3582(c)(1) permits the Court to reduce the inmate's term of imprisonment provided that the inmate has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or the inmate shows "the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility." 18 U.S.C. § 3582(c)(1)(A); *United States v. Nance*, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In this matter, the Defendant has exhausted his administrative remedies.

### B.  Grounds for compassionate release.

After exhaustion of administrative remedies, the statute establishes a two-step inquiry:

**First**: The Court must determine if an inmate is eligible for a sentence reduction that is: (A) warranted by "extraordinary and compelling reasons;" and (B) consistent with applicable Sentencing Commission Policy Statements.

**Second**: If the Court finds inmate is eligible for compassionate release, it must then consider whether a sentence reduction is warranted according to the factors set forth in 18 U.S.C. § 3553(a).

*See* 18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 826-27 (holding that parallel language in Section 3582(c)(2) establishes a similar two-step inquiry)).

The burden is on the inmate to demonstrate that he has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce his sentence. 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (holding that an inmate, "as the § 3582(c)(2) movant, bears the burden of establishing" eligibility).  Even for those inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy.  *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019) (holding that "a compassionate release . . . is an extraordinary and rare event."); *United States v. Mangarella*, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

### C.  18 U.S.C. § 3582(c)(1)(A)(i).

The compassionate release provision of § 3582(c)(1)(A), adopted as part of the Sentencing Reform Act of 1984, originally permitted judicial relief only upon a motion by the Director of the Bureau of Prisons ("BOP").  Previously, a defendant could only petition the BOP Director for compassionate release, who could then move the district court for compassionate release.  *United States v. Webster*, 2020 WL 618828, at *1 (E.D. Va. Feb. 10, 2020) (citing U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n. 4 (U.S. Sentencing Comm'n 2018)).

On December 21, 2018, however, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194.  Section 603(b) of that Act amended § 3582(c)(1)(A) to allow defendants, in specified circumstances, to file motions for compassionate release directly with the court of conviction.  *See* First Step Act, § 603(b).  Section 3582(c)(1)(A), as amended by the First Step Act, provides in relevant part:

> (c) Modification of an imposed term of imprisonment. — The court may not modify a term of imprisonment once it has been imposed except that —
>
> (1) in any case.—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > > (i) extraordinary and compelling reasons warrant such a reduction;
>
> > > . . .
>
> > > and that such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

As was the case prior to enactment of the First Step Act, § 3582(c)(1)(A) permits compassionate release based on "extraordinary and compelling reasons."[2]  *Id*.  The Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t).

In other words, once the inmate satisfies the statute's exhaustion requirement, the Court may reduce the inmate's sentence, but only if it finds that the inmate is eligible for compassionate release — that is "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is consistent with applicable policy statements, including, as discussed below, that the inmate is no longer a danger to the community.  *See Dillon*, 560 U.S. at 826-27 (holding that Section 3582(c) permits a sentencing reduction only when that reduction would be "consistent with applicable policy statements issued by the Sentencing Commission") (citing U.S.S.G. § 1B1.10 (policy statement for Section 3582(c)(2) sentencing reductions)).

**D.  U.S.S.G. § 1B1.13 Policy Statement**

Because § 3582(c)(1)(A) permits a sentencing reduction only where "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission," the pertinent policy statement, found at U.S.S.G. § 1B1.13, is binding on the Court.

---

[2]     To the extent an inmate simply asks the Court to modify the location of his sentence, that determination lies solely with the BOP. 18 U.S.C. §§ 3621(b) and 3624(c) (precluding judicial review of BOP placement decisions).

18 U.S.C. § 3582(c)(1)(A); *see also Dillon*, 560 U.S. at 827 (Because § 3582(c)(2) only permits sentence reductions "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the applicable policy statement is binding).

The Sentencing Commission Policy Statement implementing 18 U.S.C. § 3582(c)(1)(A) states that the Court may reduce a term of imprisonment if it determines that, in relevant part, the requested reduction of the defendant's sentence meets each of three criteria:

> (1) extraordinary and compelling reasons warrant the reduction;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and,
>
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

"[T]he Sentencing Commission is responsible for defining what should be considered extraordinary and compelling reasons for sentence reduction under § 3582(c)(1)(A)." *United States v. Hiller*, ELH-18-389, 2020 WL 2041673 at *3 (D. Md. April 28, 2020) (citing 28 U.S.C. § 994(t)) (further citation and internal quotation marks omitted). The Commission's Policy Statement, Application Note 1 of § 1B1.13, defines "extraordinary and compelling reasons" as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2),[3] extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—

---

[3] As discussed above, subsection (2) of § 1B1.13 requires that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of Defendant.— The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.— As determined by the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 app. note 1.

Additionally, pursuant to the mandate in § 994(t), Application Note 3 states: "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13 app. note 3.

As discussed above, it is the government's position that the Commission's Policy Statement is binding on the courts.  The Government recognizes, however, that in its recent decision in *United States v. McCoy*, the Fourth Circuit held otherwise.  In *McCoy*, the Court wrote: "There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2020) (emphasis in original).  The Court also held that the "Other Reasons" category at Application Note 1(D) is not limited to other reasons identified by BOP.  *Id*.  The Government acknowledges that the mandate issued on January 22, 2021, thus the holding in *McCoy* is controlling for this Court on this issue.  However, we do not concede that the case was decided correctly and we note our objections for purposes of any subsequent appeal. In any event, the *McCoy* decision should not result in a grant of Petitioner's request. "In any event, the issue is academic in this case because the government does not contest that the defendant has demonstrated extraordinary and compelling circumstances here".

### E.  BOP Program Statement 5050.50

The policy statement in § 1B1.13 is not the only source of criteria the Court may apply in determining whether "extraordinary and compelling reasons" exist to justify a reduction.  As detailed above, Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 app. note 1(D) (emphasis added).  Pursuant to this power, the BOP has issued a policy statement outlining the circumstances that it will permit a

compassionate release request.   This BOP regulation appears at Bureau of Prisons Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205.[4]   Notably, both the Guideline policy statement in § 1B1.13 and BOP Program Statement 5050.50 limit "extraordinary and compelling reasons" for compassionate release to circumstances involving illness, declining health, age, or exceptional family circumstances.

While Program Statement 5050.50 contains standards that are both more extensive than, and slightly different from, those set forth under § 1B1.13(1)(A) of the policy statement, BOP's program statement and determination regarding Petitioner's eligibility for relief is nonetheless entitled to appropriate deference.   *See Reno v. Koray*, 515 U.S. 50, 61 (1995) (BOP program statements, which do not require notice and comment, are entitled to "some deference" where they reflect a "permissible construction of the statute") (internal quotation marks omitted). However, to the extent that the program statement and the policy statement conflict, it is the Sentencing Commission's policy statement – the source directly authorized by statute – that is binding.

Establishing the criteria in Program Statement 5050.50 and Application Note 1 to § 1B1.13 is just the first step of a multi-step inquiry that ultimately results in the court weighing the factors set forth in 18 U.S.C. § 3553(a) to determine if the "rare" and "extraordinary" remedy of compassionate release is appropriate.   *See Chambliss*, 948 F.3d at 693-94; *White*, 378 F. Supp. 3d at 787; *Mangarella*, 2020 WL 1291835, at *2-3.

**F.   Consideration of the § 3553(a) sentencing factors.**

---

[4]      The Program Statement is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.   This program statement was amended effective January 17, 2019, following passage of the First Step Act.   It replaces the previous program statement, 5050.49, CN-1.

If the Court determines that the inmate is eligible for a sentencing reduction, the Court

must then consider whether an exercise of its discretion to reduce the inmate's sentence is

warranted according to the factors set forth in Section 3553(a) factors and determine whether to

exercise its discretion to reduce the inmate's sentence. *Dillon,* 560 U.S. at 827,

18 U.S.C. § 3582(c)(1)(A).

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but

not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  In imposing the sentence, the court shall consider *inter*

*alia* "the nature and circumstances of the offense and the history and characteristics of the

defendant."  18 U.S.C. § 3553(a)(1).

### G.  ANALYSIS

The Government would not disagree with the Defendant's first point about the First Step

Act; the First Step Act is geared at reforming the criminal justice system. The question is

whether there is something about the Defendant's situation that warrants a sentence reduction

under the First Step Act, which he does not. Next, the Defendant argues that he suffers from

untreated health conditions. Specifically, he references a lesion on his kidney, a cyst on his wrist,

and "broad line diabetes" and kidney failure. In reviewing his medical history from 2022 through

2023, it appears that any medical concerns he has are being monitored and/or have been

resolved. In his medical records, the only reference to his kidneys relate to:

1. An elevated GFR on July 24, 2023 and September 18, 2023: "A calculated GFR <60 suggests chronic kidney disease if found over a 3 month period.", Exh. 1, pp. 17, 164.
2. Chronic kidney disease that had been resolved. *See* Exh. 1, pp. 62, 102.

There is no indication of a lesion on his kidney that was not being treated. As to the cyst on his

wrist, it is mentioned there are records showing that there were consultations including an

ultrasound related to the cyst on September 22, 2022, May 5, 2023, June 5, 2023, July 13, 2023.

Exh. 1., pp. 34, 40, 48-49, 79-80, 100. Lastly, in reviewing his records about diabetes on June 2,

2023, there is a review of symptoms about diabetes on June 2, 2023. Exh. 1, p. 62.  Additionally

there is an evaluation of prediabetes and mention of it being resolved in various reports,

including a diagnostics report that shows a decreased risk of diabetes in February 2023. *See* Exh.

1, pp. 62, 102, 167. According to these records, it certainly appears that the BOP is taking

necessary steps to ensure that the Defendant remain in good health health and address any

potential health issues. The Defendant argues that the BOP is known for its negligence but does

not reference anything specific. His unfounded worry about medical care he is receiving from the

Bureau of Prisons is not an extraordinary and compelling reason to justify compassionate release

to the Defendant. None of these health concerns amount to extraordinary and compelling reasons

for his compassionate release.

The Defendant's third point was that his guilty plea and sentence were "fast-tracked" and

therefore he should now receive a reduction in sentence. The Government does not disagree that

the Defendant pled guilty early on in the case but that, again, is not a reason for him to receive a

sentence reduction. Any benefit the Defendant received was given to him as a part of the

Government's sentencing recommendation. And more importantly, this is not a justification for

him to receive a sentence reduction. In point seven, the Defendant also argues that there is a

gross disparity between his original sentence and what Congress believe is now an appropriate

sentence. Again, the Defendant does not cite to anything specific in his case that highlights a

discrepancy. The Defendant at the time of his sentencing was a career offender and according to

his presentence report, his guidelines were 262 months to 327 months.  ECF No. 218, p. 19. The

Defendant received a negotiated sentence of 144 months. There simply is no disparity in the

sentence he would receive today, as opposed to what he received in June of 2018.

In points four through six, the Defendant discusses his rehabilitation and participating in

RDAP, and other programs within the Bureau of Prisons, the fact that he has abated his drug use,

and that he has a plan for his release. The Defendant does not provide any supporting

documentation of these efforts. But even assuming these facts to be true, the Defendant has only

served approximately 68% of his sentence for a very serious offense. This Court must then

consider all pertinent circumstances, including the 3553(a) factors, and possible danger to the

community. *See United States v. Doe*, 833 F. App'x 366 (3d Cir. 2020) (per curiam) (not

precedential) (summarily affirming the denial of compassionate release, in a case in which the

defendant presented medical risk, upon holding that the district court did not abuse its discretion

in considering the nature of the offense, the defendant's history, and the status of the virus at the

facility); *United States v. Bullock*, 833 F. App'x 934 (3d Cir. 2021) (per curiam) (not

precedential) (granting motion for summary affirmance of denial of compassionate release, as

the district court did not abuse its discretion in denying relief for medically vulnerable inmate

upon considering the 3553(a) factors, including the substantial time remaining to be served on

the sentence and the defendant's criminal history and institutional infractions).

A. **The factors set forth in 18 U.S.C. § 3553(a) further support a denial of the requested relief.**

Petitioner's motion should also be denied after consideration of the factors set forth in 18 U.S.C. § 3553(a).  Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  In imposing the sentence, the court shall consider *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).[5]

Here, the seriousness of the instant offense weighs against reducing the Defendant's sentence.  The defendant was convicted for conspiracy to distribute more than one kilogram of heroin from March of 2017 through January of 2018.  Robinson was the leader of the "GP" heroin shop that operated in a violent area in Baltimore, Maryland.  The investigation into Robinson and this heroin shop involved pole camera surveillance of the drug activities, the interception of hundreds of conversations evidencing the large extent of this successful drug organization. Robinson was the leader of this organization and responsible for the distribution of a significant amount of heroin to drug users in Baltimore, Maryland.  The nature of the defendant's heinous offense demonstrates that he poses a serious danger to the community.

---

[5] Additionally, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate. *See Pepper v. United States*, 562 U.S. 476 (2011).

Further, the history and characteristics of the Petitioner also weigh against a reduction of sentence.  As discussed above, Petitioner's criminal history is substantial.  The defendant's crimes were not an isolated incident.  At the age of 18, Robinson was arrested and convicted twice of drug possession offenses.  ECF No. 238, ¶¶ 24-25.  The following year, Robinson was again convicted of drug possession and sentenced to 6 months of incarceration.  *Id.* at ¶ 26. In 1990, Robinson had his first conviction for a felony drug offense and sentenced to 10 years suspended and placed on five years of probation.  *Id*. at ¶ 27.  Approximately two and a half years into that probation, he was found in violation of that probation and was sentenced to 10 years of incarceration, suspending all but 2 years, and placed on 3 years of probation. After being paroled in 1994, he was again found in violation of that probation in 1995 and was sentenced to 8 years of incarceration. *Id.*  What appears to be the basis for the second violation of probation was his second conviction for a felony drug offense arising from an arrest in November 1994, and sentenced to 3 years of incarceration. *Id*. at ¶ 28.  In 2001, Robinson was arrested and later convicted of his third felony drug offense and sentenced to 4 years of incarceration.  *Id.* at ¶ 30.  In 2005, Robinson was arrested and later convicted of his fourth felony drug offense and initially sentenced to 5 years of incarceration.  *Id.* at 31.  Lastly, in late 2011, he was arrested for his fifth felony drug offense, and sentenced to 15 years of incarceration, suspending all but time served and sentenced to 2 years of probation.  *Id*. at ¶ 33.  Notably, Robinson was enrolled in a drug treatment program and graduated from that program in 2013.  *Id.*  Despite all these chances and opportunities to change his life, and even an opportunity to benefit from a drug treatment program, Robinson continued to financially benefit from distributing drugs and taking advantage of many drug addicts in Baltimore City.  That is how Robinson obtained his ***sixth felony drug offense***.

A sentence must, *inter alia*, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes.   18 U.S.C. § 3553(a)(2).   The facts above support the government's position that the Defendant's 144-months sentence is the correct sentence pursuant to the factors set forth in 18 U.S.C. § 3553(a), and should remain undisturbed.

Accordingly, for all the reasons discussed herein, this Court should find that Petitioner is ineligible for a sentence reduction, or that alternatively, it is unwarranted under the § 3553(a) factors.[6]   *See*, *e.g.*, *United States v. Kevin Walker*, DKC-11-686, 2020 WL 4227196 (D. Md. July 23, 2020) (denying compassionate release to 50-year-old inmate who had asthma, type 2 diabetes, hypertension, obesity, hyperlipidemia, hypothyroidism, and low IQ); *United States v. Gallman*, PWG-14-292, 2020 WL 3412995 (D. Md. June 22, 2020) (finding that inmate remained an economic danger to the community and denying compassionate release to tax protestor who had "immunocompromised status due to a kidney transplant" that placed "him at heightened risk for severe complications if he were to contract the disease"); *Barringer*, 2020 WL 2557035, at *7-9 (denying compassionate release for 60 year old white-collar inmate who suffers from "hypertension, diabetes, a chronic kidney disease, and extreme obesity (over 400 pounds)," and who served 50 percent of his sentence); *Wright*, 2020 WL 2571198 (denying compassionate release motion for inmate who is "66 years old, has a body mass index over 50, and has a variety

---

[6]       If the Court nevertheless grants a sentence reduction at or near time-served, this Court should not grant a time served sentence.   Rather, any release should include a 14-day quarantine period and medical clearance prior to the release of the defendant, so as to minimize the possibility of any spread of COVID-19 from a BOP inmate to the public.   Plus, the 14-day period will allow BOP to conduct appropriate pre-release programming (including any routine evaluations the BOP conducts prior to an inmate's release), transition plans, and travel arrangements.   To ensure the safety of the community and to allow for notification to victims, any release must not be immediate.

of medical conditions, including diabetes, hypertension (high blood pressure), chronic kidney disease, and asthma"). "Simply put, the coronavirus is not tantamount to a 'get out of jail free' card." *See Hiller*, 2020 WL 2041673, at \*4.

## **CONCLUSION**

Based upon the foregoing, Petitioner's request should be denied because he has not shown an "extraordinary and compelling reason" for compassionate release, as defined by U.S.S.G. § 1B1.13, nor is release merited under the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted.

Erek L. Barron
United States Attorney

/s/_____
Christine Goo
Assistant United States Attorney